UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2011 NOV 22 PM 4: 15

| | |
|---|---|
| DDB TECHNOLOGIES L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>MAJOR LEAGUE SOCCER, L.L.C., and<br><br>SOCCER UNITED MARKETING, L.L.C.,<br><br>d/b/a MLS DIGITAL PROPERTIES,<br><br>Defendants. | A11CV1002 LY<br>Civil Action No. _____<br><br>Judge: _____<br><br>JURY DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT AND DAMAGES

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff DDB Technologies, L.L.C., files this Complaint for Patent Infringement and Damages against Major League Soccer, L.L.C. and Soccer United Marketing, L.L.C. d/b/a MLS Digital Properties, and would respectfully show the Court as follows:

### THE PARTIES

1. Plaintiff DDB Technologies, L.L.C. ("DDB"), is a Texas limited liability company having its principal place of business at 107 Laura Lane, Austin, Texas 78746, which is within this judicial district.

2. On information and belief, Defendant Major League Soccer, L.L.C. is a Delaware limited liability company with its headquarters at 420 Fifth Avenue, 7th Floor, New York, NY 10018.

3. On information and belief, Defendant Soccer United Marketing, L.L.C. d/b/a MLS Digital Properties is a Delaware limited liability company with its headquarters at 420 Fifth Avenue, 7th Floor, New York, NY 10018.

4. Defendants Major League Soccer, L.L.C. and Soccer United Marketing, L.L.C. are collectively referred to hereinafter as "MLS."

5. MLS transacts business within the State of Texas and in this judicial district, and has committed acts of patent infringement as hereinafter set forth within the State of Texas and this judicial district. Such business includes, without limitation, MLS's operation of its Internet website, mlssoccer.com, which is available to and accessed by users, customers, and potential customers of MLS within this judicial district.

## JURISDICTION AND VENUE

6. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, UNITED STATES CODE. This Court has jurisdiction under 35 U.S.C. §§ 271, *et seq.*, and 28 U.S.C. §§ 1331 and 1338.

7. This Court has personal jurisdiction over MLS pursuant to TEX. CIV. PRAC. & REM. CODE § 17.041 *et seq.* Personal jurisdiction generally exists over MLS because MLS has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Texas and this district. Personal jurisdiction also exists because, on information and belief, MLS has entered into numerous contracts with customers in Texas for products and services offered by MLS, which products and services involve, among other things, the knowing and repeated transmission of data over the Internet. This Court's jurisdiction over MLS comports with the constitutional standards of fair play and

substantial justice and arises directly from the MLS's purposeful minimum contact with the State of Texas.

8. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

9. MLS has designated an agent for service of process in this State: Prentice Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, TX 78701.

## THE PATENTS-IN-SUIT

10. On June 11, 1996, United States Patent No. 5,526,479 ("the '479 Patent"), entitled "Method and Apparatus for Broadcasting Live Events to Another Location and Producing a Computer Simulation of the Events at that Location," was duly and legally issued by the United States Patent and Trademark Office to David R. Barstow and Daniel W. Barstow. A copy of the '479 Patent is attached hereto as Exhibit A.

11. On September 23, 1997, United States Patent No. 5,671,347 ("the '347 Patent"), entitled "Method and Apparatus for Broadcasting Live Events to Another Location and Producing a Computer Simulation of the Events at that Location," was duly and legally issued by the United States Patent and Trademark Office to David R. Barstow and Daniel W. Barstow. A copy of the '347 Patent is attached hereto as Exhibit B.

12. On March 20, 2001, United States Patent No. 6,204,862 ("the '862 Patent"), entitled "Method and Apparatus for Broadcasting Live Events to Another Location and Producing a Computer Simulation of the Events at that Location," was duly and legally issued by the United States Patent and Trademark Office to David R. Barstow and Daniel W. Barstow. A copy of the '862 Patent is attached hereto as Exhibit C.

13. On May 13, 2008, United States Patent No. 7,373,587 ("the '587 Patent"), entitled "Representing Sub-Events With Physical Exertion Actions," was duly and legally issued by the United States Patent and Trademark Office to David R. Barstow and Daniel W. Barstow. A copy of the '587 Patent is attached hereto as Exhibit D.

14. The '479, '347, '862, and '587 Patents are referred to hereinafter as "the DDB Patents."

15. David R. Barstow and Daniel W. Barstow assigned the DDB Patents to DDB. DDB owns all right, title and interest in and to the DDB Patents.

**FACTS**

16. In the 1980s and continuing through the early 1990's, Dr. David R. Barstow, a Partner in and President of DDB, along with his brother, Daniel W. Barstow, a Partner in DDB, developed a method and apparatus for providing remote viewers with simulations of live sporting events such as baseball, football, and basketball games, etc. All of the technology required to produce such simulations is embodied in the DDB Patents.

17. Without DDB's permission, MLS began providing live game simulation products/services that embody the invention(s) set forth in the DDB patents. At a minimum, for instance, MLS has provided and continues to provide products/services through its mlssoccer.com website—including the "MatchCenter" product/service—that enable remote users to watch simulations of live soccer games. *See, e.g.*, Exhibit E.

18. On June 15, 2004, DDB initiated a patent infringement suit against MLB Advanced Media, L.P. ("MLBAM"), a competitor of MLS in the live game simulation products/services industry, alleging that MLBAM's live game simulation product(s)/service(s) infringed the '479, '347, and '862 Patents. This suit received press attention in the industry and

resulted in the marking of MLBAM's competing live game simulation product(s)/service(s) with one or more of the DDB Patents.

19. Between April 8, 2010 and June 28, 2010, DDB initiated patent infringement suits against several competitors of MLS in the live game simulation products/services industry (including, for example, ESPN Inc.), alleging that each competitor's live game simulation product(s)/service(s) infringed the DDB Patents. These suits received press attention and resulted in the marking of other competing live game simulation product(s)/service(s) with one or more of the DDB Patents.

## COUNT I:
## INFRINGEMENT OF THE '479 PATENT

20. DDB repeats and realleges each of the allegations of paragraphs 1-19 as if set forth in full.

21. DDB is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287, with respect to the '479 Patent.

22. DDB has never licensed MLS under any of the DDB Patents or otherwise authorized MLS to practice the '479 Patent.

23. MLS has infringed and continues to infringe one or more of the claims of the '479 Patent by making, selling, offering for sale, and/or using live game simulation products and/or services (including, for example, MLS's MatchCenter product/service depicted in Exhibit E) covered by claims of the '479 Patent, without DDB's authorization in violation of 35 U.S.C. § 271(a).

24. On information and belief, MLS has knowledge of the existence of the '479 Patent. For instance, on information and belief, MLS has knowledge of the '479 Patent based on

DDB's lawsuits against MLS's competitors for infringement of the DDB Patents and/or the marking of competing live simulation products/services with the DDB Patents.

25. On information and belief, MLS has in the past and continues to promote, advertise, and provide access to its live game simulation products/services to users, customers, and potential customers by, at a minimum, providing links to its live game simulation products/services on its mlssoccer.com website. *See, e.g.*, Exhibit F.

26. On information and belief, MLS has engaged in this conduct with the intent to lead others to engage in conduct that MLS knew would constitute an infringement, in violation of 35 U.S.C. § 271(b).

27. On information and belief, MLS also engaged in this conduct while knowing that its live game simulation products and/or services were especially made or especially adapted for use in an infringement of the '479 Patent and were not staple articles or commodities of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

28. MLS's infringing activities have damaged and continue to damage DDB. On information and belief, MLS will continue to infringe the '479 Patent, causing irreparable harm to DDB unless enjoined by this Court.

29. In view of its knowledge of the '479 Patent, MLS's continued acts of infringement are willful.

## COUNT II
## INFRINGEMENT OF THE '347 PATENT

30. DDB repeats and realleges each of the allegations of paragraphs 1-29 as if set forth in full.

31. DDB is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287, with respect to the '347 Patent.

32. DDB has never licensed MLS under any of the DDB Patents or otherwise authorized MLS to practice the '347 Patent.

33. MLS has infringed and continues to infringe one or more of the claims of the '347 Patent by making, selling, offering for sale, and/or using live game simulation products and/or services (including, for example, MLS's MatchCenter product/service depicted in Exhibit E) covered by claims of the '347 Patent, without DDB's authorization in violation of 35 U.S.C. § 271(a).

34. On information and belief, MLS has knowledge of the existence of the '347 Patent. For instance, on information and belief, MLS has knowledge of the '347 Patent based on DDB's lawsuits against MLS's competitors for infringement of the DDB Patents and/or the marking of competing live simulation products/services with the DDB Patents.

35. On information and belief, MLS has in the past and continues to promote, advertise, and provide access to its live game simulation products/services to users, customers, and potential customers by, at a minimum, providing links to its live game simulation products/services on its mlssoccer.com website. *See, e.g.*, Exhibit F.

36. On information and belief, MLS has engaged in this conduct with the intent to lead others to engage in conduct that MLS knew would constitute an infringement, in violation of 35 U.S.C. § 271(b).

37. On information and belief, MLS also engaged in this conduct while knowing that its live game simulation products and/or services were especially made or especially adapted for

use in an infringement of the '347 Patent and were not staple articles or commodities of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

38. MLS's infringing activities have damaged and continue to damage DDB. On information and belief, MLS will continue to infringe the '347 Patent, causing irreparable harm to DDB unless enjoined by this Court.

39. In view of its knowledge of the '347 Patent, MLS's continued acts of infringement are willful.

## COUNT III
## INFRINGEMENT OF THE '862 PATENT

40. DDB repeats and realleges each of the allegations of paragraphs 1-39 as if set forth in full.

41. DDB is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287, with respect to the '862 Patent.

42. DDB has never licensed MLS under any of the DDB Patents or otherwise authorized MLS to practice the '862 Patent.

43. MLS has infringed and continues to infringe one or more of the claims of the '862 Patent by making, selling, offering for sale, and/or using live game simulation products and/or services (including, for example, MLS's MatchCenter product/service depicted in Exhibit E) covered by claims of the '862 Patent, without DDB's authorization in violation of 35 U.S.C. § 271(a).

44. On information and belief, MLS has knowledge of the existence of the '862 Patent. For instance, on information and belief, MLS has knowledge of the '862 Patent based on

DDB's lawsuits against MLS's competitors for infringement of the DDB Patents and/or the marking of competing live simulation products/services with the DDB Patents.

45. On information and belief, MLS has in the past and continues to promote, advertise, and provide access to its live game simulation products/services to users, customers, and potential customers by, at a minimum, providing links to its live game simulation products/services on its mlssoccer.com website. *See, e.g.*, Exhibit F.

46. On information and belief, MLS has engaged in this conduct with the intent to lead others to engage in conduct that MLS knew would constitute an infringement, in violation of 35 U.S.C. § 271(b).

47. On information and belief, MLS also engaged in this conduct while knowing that its live game simulation products and/or services were especially made or especially adapted for use in an infringement of the '862 Patent and were not staple articles or commodities of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

48. MLS's infringing activities have damaged and continue to damage DDB. On information and belief, MLS will continue to infringe the '862 Patent, causing irreparable harm to DDB unless enjoined by this Court.

49. In view of its knowledge of the '862 Patent, MLS's continued acts of infringement are willful.

## COUNT IV
## INFRINGEMENT OF THE '587 PATENT

50. DDB repeats and realleges each of the allegations of paragraphs 1-49 as if set forth in full.

51. DDB is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287, with respect to the '587 Patent.

52. DDB has never licensed MLS under any of the DDB Patents or otherwise authorized MLS to practice the '587 Patent.

53. MLS has infringed and continues to infringe one or more of the claims of the '587 Patent by making, selling, offering for sale, and/or using live game simulation products and/or services (including, for example, MLS's MatchCenter product/service depicted in Exhibit E) covered by claims of the '587 Patent, without DDB's authorization in violation of 35 U.S.C. § 271(a).

54. On information and belief, MLS has knowledge of the existence of the '587 Patent. For instance, on information and belief, MLS has knowledge of the '587 Patent based on DDB's lawsuits against MLS's competitors for infringement of the DDB Patents and/or the marking of competing live simulation products/services with the DDB Patents.

55. On information and belief, MLS has in the past and continues to promote, advertise, and provide access to its live game simulation products/services to users, customers, and potential customers by, at a minimum, providing links to its live game simulation products/services on its mlssoccer.com website. *See, e.g.*, Exhibit F.

56. On information and belief, MLS has engaged in this conduct with the intent to lead others to engage in conduct that MLS knew would constitute an infringement, in violation of 35 U.S.C. § 271(b).

57. On information and belief, MLS also engaged in this conduct while knowing that its live game simulation products and/or services were especially made or especially adapted for

use in an infringement of the '587 Patent and were not staple articles or commodities of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

58. MLS's infringing activities have damaged and continue to damage DDB. On information and belief, MLS will continue to infringe the '587 Patent, causing irreparable harm to DDB unless enjoined by this Court.

59. In view of its knowledge of the '587 Patent, MLS's continued acts of infringement are willful.

## REQUEST FOR JURY TRIAL

60. Pursuant to FED. R. CIV. P. 38, DDB demands a trial by jury of any issue triable of right by a jury.

## PRAYER FOR RELIEF

THEREFORE, DDB prays for relief against MLS as follows:

A. Judgment that MLS has infringed and continues to infringe one or more claims of the DDB Patents in violation of 35 U.S.C. § 271(a), (b), and (c), and that such infringement is willful;

B. An award of damages incurred by DDB as a result of MLS's infringement of the DDB Patents, said damages to be trebled in view of the willful and deliberate nature of the infringement;

C. A preliminary and permanent injunction enjoining MLS, its officers, agents, servants, employees and attorneys, and other persons in active concert or participation with MLS from further infringement of the DDB Patents;

D.  An assessment of costs, including reasonable attorney fees pursuant to 35 U.S.C. § 285, and prejudgment interest against MLS; and

E.  Such other and further relief as this Court may deem just and proper.

Dated: November 22, 2011

Respectfully submitted,

Michael D. Gannon (gannon@mbhb.com)
Leif R. Sigmond, Jr. (sigmond@mbhb.com)
Rory P. Shea (shea@mbhb.com)
Paul A. Kafadar (kafadar@mbhb.com)
John D. Smith (smith@mbhb.com)
**McDonnell Boehnen**
**Hulbert & Berghoff LLP**
300 South Wacker Drive, Suite 3100
Chicago, Illinois 60606
Tel: (312) 913-0001
Fax: (312) 913-0002

James G. Ruiz (jruiz@winstead.com)
TX Bar No. 17385860
**Winstead PC**
401 Congress Avenue, Ste.2100
Austin, TX 78701
Tel: (512) 370-2818
Fax: (512) 370-2850

*Counsel for Plaintiff*
*DDB Technologies L.L.C.*

AUSTIN_1\648917v1